UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rob Lieving,

    Plaintiff,

v.

Cutter Associates, Inc.,

    Defendant.

Civil No. 09-2938 (JNE/JJG)
ORDER

Roy A. Ginsburg, Esq., Dorsey & Whitney, LLP, appeared for Plaintiff Rob Lieving.

William Christopher Powell, Esq., Siegel Brill Greupner Duffy & Foster, PA, appeared for Defendant Cutter Associates, Inc.

Rob Lieving brought this action in state court seeking a declaration that a 2006 employment agreement with Cutter Associates, Inc. (Cutter) is unenforceable. Cutter removed the action to this Court on October 22, 2009, and filed a Motion to Dismiss or in the Alternative to Transfer Venue one week later. For the reasons stated below, the Court denies the motion and stays this action pending arbitration.

## I. BACKGROUND

Cutter is a Massachusetts corporation that provides consulting, benchmarking, and research services for investment management firms. Lieving, a Minnesota citizen, worked for Cutter as an independent contractor from January 2005 to January 2006. On January 2, 2006, Lieving and Cutter entered into an employment agreement (2006 Agreement), which provided that Lieving "shall be paid 44% for the first $100,000 of his billing. Once the annual billing exceeds $100,000, Lieving shall be paid 54% of the amount in excess of $100,000." The 2006 Agreement also contained the following clauses:

1

> 5.  Lieving agrees that for a period of one year following the termination of this agreement, he shall not solicit employment, consulting contracts or compete for the business of any firm that was a consulting client or prospect of Cutter where Lieving was introduced to the client or prospect.
>
> . . . .
>
> 11. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be resolved by arbitration in Massachusetts. Such arbitration shall be conducted in accordance with the laws, rules, procedures, and regulations of the American Arbitration Association. The Arbitrator shall not be authorized to award either party extra contractual damages (i.e., compensatory or punitive damages). In the event of a breach of this Agreement by Cutter, Lieving's damages shall be limited to an award of lost wages and benefits, as may be determined by the Arbitrator.
>
> . . . .
>
> 13. This Agreement has been executed in the State of Massachusetts, and it is expressly contemplated by the parties and agreed upon by them that the interpretation and enforcement hereof shall be governed by the substantive and procedural laws of the State of Massachusetts. Any and all disputes hereunder, including applicability of this paragraph, shall be adjudicated in an arbitration proceeding in accordance with the terms of this Agreement.
>
> . . . .
>
> 18. This agreement shall not be modified except by a written instrument signed by both parties.

Cutter presented Lieving with a new employment agreement on October 1, 2007 (2007 Agreement). This agreement retained the arbitration, choice-of-law, and modification clauses, but it altered Lieving's method of compensation to one based on a salary plus a bonus. The 2007 Agreement also omitted the non-compete clause. Although Lieving refused to sign the 2007 Agreement, Cutter began paying him pursuant to its terms.

On July 1, 2008, Cutter again presented Lieving with another employment agreement (2008 Agreement), which Lieving refused to sign. The 2008 Agreement was essentially the

2

same as the 2007 Agreement except that it omitted the arbitration clause and added the following non-compete clause:

> 6. Lieving agrees that for a period of one year following the termination of this Agreement (a) he shall not directly or indirectly, as an employee, consultant or otherwise, provide services to, solicit consulting contracts from, or compete for the business of, any firm that was a consulting client or prospect of Cutter at any time during the one year period preceding the termination of this Agreement if during such one year period Lieving provided any services to such client or was involved in the solicitation of, or marketing of services to, such client or prospect; and (b) he shall not recruit, solicit or induce, or attempt to induce, any Cutter consultants or subcontractors to terminate their relationship with Cutter.

Finally, On March 1, 2009, Cutter presented Lieving with a new employment agreement (2009 Agreement) that reduced his base salary and added a commission component. The 2009 Agreement was otherwise the same as the 2008 Agreement. Cutter began paying Lieving pursuant to the 2009 Agreement despite his refusal to sign the agreement.

Throughout his tenure with Cutter, Lieving received nearly all of his work assignments, including work for LSV Asset Management, Inc. (LSV), from Ari Fuad, a Cutter employee based in Minnesota. In April 2009, Fuad left Cutter to form Adeptyx Consulting Inc. (Adeptyx), a company that provides information technology consulting services to the financial services industry. LSV is one of Adeptyx's clients.

On July 24, 2009, Lieving informed Cutter of his intent to resign effective August 8, 2009. Lieving also told Cutter's president and chief executive officer that he would be joining Adeptyx. In response, Cutter's counsel indicated in a letter to Lieving dated July 29, 2009, that the terms and conditions of the 2006 Agreement remained in effect; that he was "prohibited . . . from working with or for LSV . . . for one year from [his] announced resignation date of August 8, 2009"; that "[u]nder paragraph 11, [he] agreed that any controversy or claim arising from [the 2006 Agreement] shall be resolved by arbitration in Massachusetts"; and that "Cutter [was]

3

prepared to take any legal action to enforce [the 2006 Agreement]." Lieving began working for Adeptyx on August 17, 2009, and has worked on projects for LSV.

On October 14, 2009, Lieving brought an action against Cutter in Minnesota state court seeking a declaration "that the [2006] Agreement is not enforceable against Lieving either generally or specifically as to Lieving's work for LSV." Two days later, Cutter sued Lieving in the United States District Court for the District of Massachusetts, asserting claims for breach of the 2006 Agreement and intentional interference with prospective business relations. Cutter sought injunctive relief as well as "money damages, treble damages, punitive damages, and all other appropriate damages, plus attorneys' fees, costs and interest," and demanded a jury trial. Although the complaint referred to the 2006 Agreement's non-compete, choice-of-law, and modification clauses, it did not mention the arbitration clause. Cutter also filed a motion for injunctive relief and a motion to compel arbitration concurrent with the complaint.

On the day that Cutter filed the Massachusetts action, Cutter's Minnesota counsel asked Lieving's counsel whether he would accept service of the complaint and the motions on Lieving's behalf. Lieving's counsel responded that he was not authorized to accept service but that he would inquire with Lieving about proceeding in such a manner. On October 19, 2009, Lieving's counsel informed Cutter's Minnesota counsel that he "should advise [his Massachusetts] counterpart to serve Rob Lieving." Cutter sent Lieving a request for waiver of a summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure on October 22, 2009. A copy of the complaint and "courtesy copies" of Cutter's motions were enclosed with Cutter's waiver request. Lieving waived service of a summons on October 28, 2009. Lieving's counsel filed a notice of appearance in the Massachusetts action the next day and was admitted *pro hac*

*vice* on November 4, 2009. Cutter did not separately serve the motions on Lieving's counsel pursuant to Rule 5(b)(1) and no certificates of service were filed.

On November 5, 2009, Cutter moved for an expedited hearing on its motion for injunctive relief. One week later, Cutter's motion for injunctive relief was scheduled to be heard on December 9, 2009. The following day, Lieving sent a letter to the Massachusetts court asserting that he had not been properly served with the motion for injunctive relief or the motion to compel arbitration. Lieving moved to stay the Massachusetts proceeding three days later. On November 17, 2009, Cutter filed a "Motion for Leave to File Late a Certificate of Service for [Cutter's] Motions to Compel Arbitration and for Injunctive Relief." At the December 9 hearing, the Massachusetts court denied Cutter's motion for injunctive relief, granted Cutter's motion to file late certificates of service, and "grant[ed] the motion to stay insofar as it stays the motion to compel arbitration."

Meanwhile, Cutter removed the Minnesota action to federal court on October 22, 2009. One week later, Cutter moved to dismiss the action based on the 2006 Agreement's arbitration clause. In the alternative, Cutter requested that venue be transferred to the United States District Court for the District of Massachusetts. At the January 14, 2010, hearing on Cutter's motion, the Court requested additional briefing to explain why the motion to compel arbitration in the Massachusetts action was ostensibly not properly served. Having received submissions from both parties, the Court now addresses Cutter's motion.

## II. DISCUSSION

Cutter contends that this action should be dismissed because Lieving's claims are subject to arbitration under the 2006 Agreement. Lieving does not argue that the terms of the 2006 Agreement do not require arbitration of his dispute with Cutter. Moreover, although Lieving

maintains that the 2006 Agreement is invalid, he acknowledges that this issue would ordinarily be decided in the first instance by the arbitrator. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("[R]egardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."). Nevertheless, Lieving asserts that Cutter waived its right to arbitrate. Furthermore, if Cutter has not waived its right to arbitrate, Lieving requests that this action be stayed rather than dismissed.

   *1. Waiver*

  "A party may be found to have waived its right to arbitration if it: '(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts.'" *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007) (quoting *Ritzel Commc'ns, Inc. v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993)). A party acts inconsistently with its right to arbitrate by "substantially invok[ing] the litigation machinery before asserting its arbitration right." *Ritzel*, 989 F.2d at 969 (quotation marks omitted). Examples of a substantial invocation of the litigation machinery include "fil[ing] a lawsuit on arbitrable claims, engag[ing] in extensive discovery, or fail[ing] to move to compel arbitration and stay litigation in a timely manner." *Lewallen*, 487 F.3d at 1090 (citing *Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d 157, 158 (8th Cir. 1991)). A party safeguards its right to pursue arbitration by doing "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Id.* at 1091 (quotation marks omitted). A court considers the totality of the circumstances in determining whether a party has waived its right to arbitration. *Hooper v. Advance Am., Cash*

*Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir. 2009) (citing *Ritzel*, 989 F.2d at 971). Any doubts about waiver are resolved in favor of arbitration. *Stifel*, 924 F.2d at 158.

In this case, two actions by Cutter are clearly consistent with its right to arbitrate. First, the July 29, 2009, letter from Cutter's counsel expressly referred to the 2006 Agreement's arbitration clause and indicated that Cutter was prepared to take any legal action required to enforce that agreement. Second, shortly after Lieving brought this declaratory action, Cutter filed the instant motion to dismiss that is predicated on the 2006 Agreement's arbitration clause. If this had been the extent of Cutter's actions, the waiver issue could be easily decided in its favor. *Cf. Dumont v. Saskatchewan Gov't Ins.*, 258 F.3d 880, 887 (8th Cir. 2001) ("We cannot equate [defendant's] seeking an early dismissal of this case solely on other than merits-based grounds, coupled with its concomitant express warning that it would seek to compel arbitration, as acts inconsistent with a known right to compel arbitration."). Lieving, however, argues that Cutter acted inconsistently with its right to arbitrate by filing suit in Massachusetts, seeking preliminary injunctive relief, and failing to pursue its motion to compel arbitration.

Initiating judicial action over an arbitrable dispute ordinarily constitutes a presumptive waiver of the right to arbitrate. *See Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995) ("[A]n election to proceed before a non-arbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate."); *see also Nicholas v. KBR Inc.*, 565 F.3d 904, 908 (5th Cir. 2009) ("We conclude that the act of a plaintiff filing suit without asserting an arbitration clause constitutes substantial invocation of the judicial process, unless an exception applies."). Cutter, however, sought preliminary injunctive relief immediately upon filing its complaint. Such relief pending arbitration is available in the District of Massachusetts. *See Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 (1st Cir. 1986) (holding

7

that a district court may issue a preliminary injunction to preserve the status quo pending arbitration).[1] Therefore, so long as Cutter also sought to compel arbitration, it did not act inconsistently with its right to arbitrate by bringing suit in Massachusetts and pursuing preliminary injunctive relief.

Lieving contends that Cutter's failure to properly serve the motion to compel or to schedule a hearing for the motion to be heard shows that Cutter wanted to wait for the court's ruling on its motion for injunctive relief before deciding whether to pursue arbitration. *See Hooper*, 589 F.3d at 922 ("[Defendant] 'wanted to play heads I win, tails you lose,' which 'is the worst possible reason' for failing to move for arbitration sooner than it did." (quoting *Cabinetree*, 50 F.3d at 391)). The record does not support Lieving's argument. First, Cutter took the same actions with respect to service of the motion to compel arbitration and the motion for injunctive relief. Whether service was effective is irrelevant because the same deficiencies would apply to both motions. Stated differently, Cutter did not attempt to pursue the motion for injunctive relief by effecting proper service while keeping the motion to compel arbitration at bay pending an unfavorable outcome. Second, under the local rules for the District of Massachusetts, motions are decided without a hearing unless a party requests a hearing and the court grants the request. D. Mass. R. 7.1(d)-(f). Here, it is plausible that Cutter did not believe a

---

[1] Lieving argues that Cutter sought an injunction that would have altered the status quo by prohibiting Lieving from working on LSV matters. The relevance of this distinction is questionable. *See, e.g.*, *Braintree Labs., Inc. v. Citigroup Global Mkts., Inc.*, Civ. No. 09-10601, 2009 U.S. Dist. LEXIS 103980, at *8-9 (D. Mass. Nov. 4, 2009) (considering a motion for a preliminary mandatory injunction pending arbitration). Nevertheless, the status quo is "the last uncontested status which preceded the pending controversy." *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 893 (1st Cir. 1988) (quotation marks omitted); *see also* 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948 (2d ed. 1995). In this case, that status existed before Lieving began working on LSV projects at Adeptyx. Accordingly, Cutter's motion for preliminary injunctive relief did not seek to change the status quo.

hearing was necessary on the motion to compel arbitration, in which case Cutter's failure to schedule a hearing does not reflect the type of nefarious gamesmanship that would support waiver. Therefore, based on the totality of the circumstances, and resolving any doubts in favor of arbitration, the Court determines that Cutter has not waived its right to arbitrate by acting inconsistently with that right.[2]

    2.    *Dismiss versus stay*

Section 3 of the Federal Arbitration Act provides that a court "upon being satisfied that the issue involved in [a] suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (2006). A court may also dismiss an action "where the entire controversy between the parties is subject to and will be resolved by arbitration." *Jann v. Interplastic Corp.*, 631 F. Supp. 2d 1161, 1167 (D. Minn. 2009) (quotation marks omitted). *See generally Lloyd v. Hovensa, LLC*, 369 F.3d 263, 268-69 (3d Cir. 2004) (identifying circuit split on issue and gathering cases). Here, the 2006 Agreement's arbitration clause is broad and would apply to the entire controversy. Whether that agreement remains valid and enforceable, however, is an issue that the arbitrator must decide. If the

---

[2] Lieving also argues that Cutter acted inconsistently with its right to arbitrate by abandoning the 2006 Agreement and by bringing a lawsuit against Adeptyx in the District of Minnesota alleging that Adeptyx tortiously interfered with the 2006 Agreement by allowing Lieving to work on LSV matters. These assertions are irrelevant to the waiver inquiry. First, the arbitrator must determine in the first instance whether Cutter abandoned the 2006 Agreement. *See Buckeye Check Cashing*, 546 U.S. at 449. Second, although Cutter's lawsuit against Adeptyx involves legal and factual issues related to this action, there is no indication that Cutter, a signatory to the 2006 Agreement, could compel Adeptyx, a nonsignatory, to arbitrate the dispute. *Cf. Nitro Distrib., Inc. v. Alticor, Inc.*, 453 F.3d 995, 999 (8th Cir. 2006) (noting that a nonsignatory to an arbitration agreement can in certain circumstances require a signatory to arbitrate but refusing to permit a signatory to compel a nonsignatory to arbitrate). Consequently, Cutter did not act inconsistently with its right to arbitrate under the 2006 Agreement by filing a lawsuit against Adeptyx instead of pursuing arbitration.

arbitrator determines that the parties' conduct modified or abrogated the 2006 Agreement and that there is no applicable arbitration clause, the arbitrator would be without authority to resolve the dispute and the matter should be returned to this Court. Therefore, this action is stayed pending arbitration.[3] The Court declines to consider Cutter's request for transfer at this time.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion to Dismiss or in the Alternative Transfer Venue [Docket No. 5] is DENIED.

2. This action is STAYED pending arbitration.

Dated: February 1, 2010

s/ Joan N. Ericksen  
JOAN N. ERICKSEN  
United States District Judge

---

[3] Cutter has not asked the Court to compel arbitration, and the Court likely lacks such authority. *See* 9 U.S.C. § 4 (2006) (stating that upon determining a dispute is subject to arbitration, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."); *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1218-20 (10th Cir. 2005) (identifying circuit split and adopting the majority approach, which provides that "where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4"); *see also DaPuzzo v. Globalvest Mgmt., Co.*, 263 F. Supp. 2d 714, 739 (S.D.N.Y. 2003) (noting that a federal court without authority to compel arbitration under § 4 must "order a stay [of the court proceeding] thereby leaving the parties free to pursue their contractual rights and remedies in the appropriate venue").